IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Melissa Dietz, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|    v. | )   No. 1:20-cv-02278-JPH-DLP |
| | ) |
| Med-1 Solutions, LLC, an Indiana | ) |
| limited liability company, | ) |
| | ) |
|    Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

Plaintiff, Melissa Dietz ("Dietz"), hereby submits the following memorandum of law in support of her Motion for Summary Judgment:

## INTRODUCTION

Med-1 Solutions ("Med-1) sent two separate letters, each dated November 4, 2019, each on attorney letterhead and each signed by a different attorney, attempting to collect the same defaulted medical debt from Ms. Dietz, see, Dkt. 15-3, 15-4. The fact that Med-1's letters were ostensibly from two attorneys, rather than a non-attorney collector or agency, caused Ms. Dietz to fear that additional legal action was coming, in the way of garnishment -- or possibly worse -- and played a significant role in her decision about whether to pay her debts, including whether to pay that debt, other debts, or whether to file bankruptcy.

Section 1692e(3) of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA") prohibits the false representation or implication that any individual is an attorney or any communication is from an attorney. The Seventh Circuit has long held

1

that an attorney who signs a dunning letter must be meaningfully involved in the collection of the debt and the decision to send the letter, see, Avila v. Rubin, 84 F.3d 222, 228-229 (7th Cir. 1995); Boyd v. Wexler, 275 F.3d 642, 645-48 (7th Cir. 2001); and Nielsen v. Dickerson, 307 F.3d 623, 635 (7th Cir. 2002). In reality neither of the two attorneys who signed these letters were involved in any meaningful way as to the collection of Ms. Dietz's defaulted medical debt. Med-1's form debt collection letters thus violated §1692e(3) of the FDCPA.

As Ms. Dietz set forth in her Amended Complaint, when she received the two letters at issue, she became confused, alarmed and upset, see, Dkt. 15 at ¶10.[1] In fact, Ms. Dietz experienced significant stress over the letters, which included a loss of sleep. Although she spoke to an attorney regarding the situation, she still worried about the possible consequences. Med-1's letters -- which clearly intimidated Ms. Dietz, caused her to be confused, distressed her, and also played a role in her decision as to how to handle her debts -- unequivocally violated §1692e(3) of the FDCPA. Summary judgment in favor of Ms. Dietz is warranted.

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

**I.    The Parties and Jurisdiction**

1.    Melissa Dietz is a citizen of the State of Indiana, residing in the Southern District of Indiana, from whom Defendant attempted to collect a defaulted consumer debt that she allegedly owed for medical treatment, see, Dkt. 15 at ¶ 1; Dkt. 15-3, Dkt. 15-4; see also, Exhibit A, transcript from the Deposition of Ms. Dietz, at p. 12, lns. 3-19.

---

1. Ms. Dietz's Amended Complaint was filed as a putative class action, see, Dkt. 15. Due to Defendant's net worth and the size of the putative class, however, Ms. Dietz did not move for class certification, as class treatment would not be suitable; Ms. Dietz is proceeding in this matter on an individual basis.

2.     Venue is proper in this District because the acts and transactions occurred here, the Plaintiff resides here, and Defendant resides and transacts business here, see, Dkt. 15 at ¶¶4-6, Dkt. 15-3, 15-4, Dkt. 17 at ¶¶ 4-6.

3.     Defendant, Med-1 Solutions, LLC ("Med-1"), is an Indiana corporation that was acting as a debt collector, as defined by §1692a of the FDCPA, as to the defaulted consumer debt it attempted to collect from Ms. Dietz, see, Dkt. 15 at ¶ 4; Dkt. 17 at ¶ 4; Dkt. 15-1, 15-2, 15-3, 15-4.

## II.    Med-1's Initial Collection Of The Community Health Debt

4.     On October 3, 2018, Ms. Dietz received medical services at Community Health, see, transcript of the Deposition of Melissa Dietz, attached hereto as Exhibit A, at p. 19, lns. 2-4.

5.     Ms. Dietz does not recall receiving a bill from Community Health regarding these medical services, see, Exhibit A, at p. 19, lns. 19-21. In fact, Med-1 has not produced any bills that were sent by Community Health to Ms. Dietz regarding the October 3, 2018 medical services. Ms. Dietz was unaware of the extent of the medical bill she had allegedly owed for the October 3, 2018 medical services, see, Exhibit A, at p. 19, ln. 22 to p. 20, ln. 1.

6.     On April 1, 2019, a collector from Med-1 called Ms. Dietz to attempt to collect the Community Health debt, as well another $30 Community Health debt. A transcript of this phone call is attached hereto as Exhibit B. Ms. Dietz was unaware that she owed over $6,800 to Community Health, which apparently had not been covered by her insurance, see, Id. She explained that she had recently lost her job, about three weeks prior to the call, see, Id. Ms. Dietz told the collector to get in touch with her insurance company because she thought the amount should have been covered, but

3

the collector told Ms. Dietz that she would have to contact the insurance company herself, see, Id. Ms. Dietz said she would have to put this bill on her bankruptcy "with everything else" because she felt that was all she could do, see, Id. Ms. Dietz told Med-1's collector she would have to get her bills in order and speak to an attorney regarding bankruptcy, the collector said she would note that Ms. Dietz was "doing a possible bankruptcy, see, Exhibit B.

7. Due to the financial hardship caused by the loss of her job, and the apparent non-coverage of the Community Health services by her insurance, see, Exhibit A, p. 14, lns. 11-19, p. 42, lns. 10-20, Ms. Dietz was unable to pay the alleged Community Health debt; see also, Exhibit B.

8. During the months that followed the loss of her job in March, 2019, Ms. Dietz considered her financial options, whether to file bankruptcy, and whether and which bills she could pay, see, Exhibit A at p. 43, lns. 3 - 16:

> **Q.   [Y]ou stated that you told them [Med-1] that you were considering filing bankruptcy at that point?**
>
> A.   Yes, ma'am. At that point when I got laid off of my job -- at that point, I was just letting everybody know I was unemployed and working out trying to figure out what I was going to do, and there was a chance that I was going to be filing bankruptcy.
>
> **Q.   So then between that time in April 2019 and when you ultimately met with John Steinkamp, you were considering your options?**
>
> A.   That is correct. I was weighing out my options all different ways to see how I can -- what I needed to do.

See also, p. 44, ln. 21 to p. 45, ln 4 (clarifying earlier testimony, and explaining that Ms. Dietz told Med-1 "there was a chance that I was going to file bankruptcy", emphasis added).

4

9.      Although Ms. Dietz considered filing bankruptcy, she hoped to work something out and avoid taking this drastic step, see, Exhibit A, at p. 23, lns. 14-25.

10.     In October, 2019, Ms. Dietz spoke with attorney John Steinkamp regarding her financial options for multiple debts which she was unable to pay during the summer of 2019, and she retained his firm's services for assistance with multiple debts she was unable to pay, involving the possibility of filing for bankruptcy protection, see, Exhibit A, at p. 29, lns. 2-20, p. 45, lns. 7-16.

### III.    Ms. Dietz's Receipt Of The November 4, 2019 Collection Letters

11.     In two separate letters, each dated November 4, 2019, Med-1 attempted to collect the same $6,868 medical debt from Ms. Dietz, see, Dkt. 15-3, 15-4. Although both letters were sent on the same day, to collect the same debt in the same amount, they were sent by two different attorneys on behalf of Med-1: Richard Huston ("Huston") and Christina Hanna ("Hanna"), see, Dkt. 15-3, 15-4. Each letter began with a heading the stated the name of the attorney and "attorney at law", contained a signature of each attorney, followed by "attorney at law", and stated that Med-1 "represented the above-named creditor", Community Health, see, Dkt. 15-3, 15-4.

12.     Receiving two letters, from two different attorneys, regarding the same debt was a cause for serious concern for Ms. Dietz. Ms. Dietz, who had experienced garnishment before (see, Exhibit A, at p. 27, lns. 22-25; p. 45, ln. 20 to p. 46 ln. 12), was immediately afraid that she would be garnished, due to the involvement of two separate attorneys -- and even worried she might be sued twice – as a result of Med'1's collection of the alleged Community Health debt:

> Q.      Were you concerned when you got these letters in November that you could be garnished?
> **A.      Yes, because I had fully processed still with John Steinkamp --**

5

> **I hadn't completed everything, so there was still a chance that could've taken place, yes.**
> Q.  Were you concerned that you could've been sued?
> **A.  Yes, ma'am.**
> Q.  Were you concerned you could've been sued twice for the same debt?
> **A.  Yes, ma'am.**
> Q.  Was there anything else that you were concerned about when you got these letters?
> **A.  I mean, it's hard enough to live right now. I can't afford to have them take any money. So my biggest fear is what am I going to do if they do.**
> Q.  Did you lose any sleep over this?
> **A.  I mean, the stress level of bills is a little hard to handle sometimes.**
> Q.  But yes or no, were you up at night sometimes worried about this?
> **A.  Yes, sometimes.**

See, Exhibit A, at p. 46, ln. 7 to p. 47, ln. 3.

13.  The involvement of two attorneys in the collection of the alleged Community Health debt also made Ms. Dietz concerned that she may experience additional negative consequences of having a judgment entered against her, such as having a body attachment issued after missing a court hearing of which she was unaware--something Ms. Dietz experienced in 2010 over a much smaller debt (that may not have even been her debt) allegedly owed to a homeowners' association, see, Exhibit A, at p. 48, lns. 10-25; see also, Ms. Dietz's responses to Med-1's interrogatories, attached hereto as Exhibit C, at Interrogatory No. 3.

14.  Ms. Dietz called attorney John Steinkamp, after receipt of the November 4, 2019 letters and, although she knew that she had not yet filed bankruptcy, she still feared that there was a possibility that a lawsuit, perhaps two lawsuits, may be filed, and that she might be garnished, see, Exhibit A, at p. 47, lns. 10-24.

15.  Ms. Dietz described receiving the two Med-1 collection letters, ostensibly

6

from two attorneys, as having "played a huge role in her stress level", including loss of sleep, see, Exhibit A at p. 46, ln. 7 to p. 47, ln. 9.

16.     Ms. Dietz's decision as to whether to file bankruptcy or whether to attempt to repay the debts that had accumulated during her period of unemployment was significantly impacted by Med-1's November 4, 2019 attorney collection letters, see, Exhibit A at p. 23, lns. 14-25.

**IV.     Med-1's Attorney Review**

17.     Mr. Huston signed over 1,300 of these letters on the day he signed the letter he sent to her, nearly 8,000 that week, and over 30,000 in the month of November, 2019, see, Defendant's Answer to Interrog. No. 9, attached hereto as Exhibit F; see also, the transcript of the deposition of Med-1's in-house attorney Richard Huston, taken on July 10, 2021, attached as Exhibit D, at p. 14, lns. 10-12, p. 14 lns. 4-10.

18.     Similarly, Ms. Hannah admitted that she signed about 477 letters similar to the one that she sent to Ms. Dietz on the day she signed the letter at issue, over 5,000 that week, and over 20,000 that month, see, Exhibit F at Suppl. Answer to Interrog. No. 11, see also, the transcript of the deposition of Med-1's in-house attorney Christina Hanna, taken on July 10, 2021, attached as Exhibit E, at p. 8, ln. 17 to p. 9, ln. 1.

19.     In fact, between October 16, 2019, and February 12, 2021 (a 16-month period), Med-1 sent 357,775 letters to consumers, which were purportedly from attorneys, similar to the two letters at issue here, see, Med-1's Suppl. Answer to Interrog. No. 1, attached hereto as Exhibit G.

20.     Moreover, during their typical eight-hour work-days, both attorneys Huston

7

and Hanna have responsibilities other than signing collection letters, including attending court, and, although neither could recall how many hours were spent signing letters versus attending and traveling to court, both attorneys stated that there were no days during which they only signed letters, see, Exhibit D, at p. 15, ln. 11 to p. 16, ln. 13; Exhibit F, at p. 10, ln. 17 to p. 12, ln. 14.

21. Both attorneys Huston and Hanna stated that they spend only several seconds signing each letter similar to the ones they each sent Ms. Dietz, see, Exhibit D, at p. 14, ln. 24, to p. 15, ln. 3; Exhibit E, at p. 9, lns. 2-5.

22. Both attorneys Huston and Hannah stated that, during their few seconds of review, they would verify only 1) that the letter is addressed to an address where Med-1 may legally collect a debt, 2) that the debt is within the statute of limitations for collection, and 3) that the amount of the debt was a non-zero number, see, Exhibit D, p. 12, lns. 2-6; 12-16; Exhibit E, p. 7, ln. 9 to p. 8, ln. 11.

23. Neither Mr. Huston, nor Ms. Hanna, review any files or any computer systems when signing these letters to verify any of the information, see, Exhibit D, p. 13, lns. 6-11; Exhibit E, p. 8, lns. 6-11; 9, lns. 11-16.

24. In fact, if a consumer were to call Med-1 in response to one of these form letters, signed by an attorney, it was Med-1's policy at the time to not permit a consumer to speak to the attorney but, instead, they had to speak to one of Med-1's non-attorney collector staff members, see, Exhibit D, at p. 22, ln. 3 to p. 23, ln. 2.

25. All of Defendant Med-1's collection actions at issue in this matter occurred within one year of the date of Plaintiff's Complaint, see, Dkt. 1.

## ARGUMENT

Summary judgment is the "put up or shut up moment" in a case, when the moving party is required to marshal and present to the court the evidence it contends will prove its case, see, Porter v. City of Chicago, 700 F.3d 944, 956 (7th Cir. 2012); Goodman v. National Security Agency, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment should be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, see, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Donahoe, 699 F.3d 989, 994 (7th Cir. 2012); see also, Fed.R. Civ.P. Rule 56(a).

To survive summary judgment, the non-moving party must present specific facts showing a genuine issue for trial, see, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Durham v. FreshRealm, 2021 U.S. Dist. LEXIS 136666, at [*12]-[*13] (S.D. Ind. 2021)(Pratt, C.J.), citing, Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). The non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, the nonmovant must go beyond the pleadings to support his or her contentions with properly admissible evidence, see, Celotex, 477 U.S. at 322-323; see also, Durham, 2021 U.S. Dist. LEXIS 136666, at [*13].

Defendant Med-1 sent Plaintiff Dietz a collection letter, ostensibly from an attorney (but which was sent without any meaningful attorney review or involvement in the collection of the account), in an attempt to collect a debt, in violation of §1692e(3) of the FDCPA, see, SMF at ¶¶ 11, 17-24. As Ms. Dietz's testimony

9

demonstrates, Defendant's unlawful collection caused her stress, sleeplessness, and was a factor in her decision of whether to file bankruptcy, see, SMF at ¶¶ 11-16. No issues of material fact remain, and summary judgment in favor of Mr. Kinnick is appropriate.

**I.     Med-1's Collection Letters Falsely Represented That Attorneys Conducted A Meaningful Review Of Her Account When, In Fact, They Had Not.**

Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt, including the false representation or implication that any individual is an attorney or any communication is from an attorney, see, 15 U.S.C. § 1692e(3). The Seventh Circuit has long held that an attorney sending dunning letters must be directly and personally involved in the collection of the account and the decision to send the letter. As the Seventh Circuit long ago noted:

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.

See, Avila, 84 F.3d at 228-229; see also, Boyd, 275 F.3d at 645-48; and Nielsen, 307 F.3d at 635; 15 U.S.C. § 1692e(3).

The November 4, 2019 letters that Huston and Hanna of Med-1 sent to Ms. Dietz made it appear as though the letters were sent by two attorneys. Discovery in this matter has shown, however, that neither Mr. Huston, nor Ms. Hanna, conduct any meaningful attorney reviews of the letters that they sign:

• Mr. Huston and Ms. Hanna sign hundreds, sometimes thousands of these form collection letters a day, spending only "several seconds" reviewing each (SMF ¶¶17-24);

- Neither Mr. Huston and Ms. Hanna spend an entire eight-hour workday signing letters; in fact, each of them have additional responsibilities, including traveling to, and attending, court hearings (SMF ¶ 20);

- Mr. Huston and Ms. Hannah verify only that the letter is addressed to an address where Med-1 may legally collect a debt, that the debt is within the statute of limitations for collect, and 3) that the amount of the debt was a non-zero number (SMF ¶ 22); and,

- Neither Mr. Huston nor Ms. Hanna independently verify any information against Med-1's computer system (SMF ¶ 23).

The testimony from Med-1's own witnesses in this matter makes clear that no attorney was personally involved in the decision to send the form collection letters to Ms. Dietz. Thus, the November 4, 2019 collection letters created the false and misleading impression that they were communications from attorneys, when, in fact, no attorney was directly and personally involved in the decision to send the November 4, 2019 collection letters. Defendant Med-1's collection actions falsely implied that two attorneys were meaningfully involved in the collection of Ms. Dietz's debt, when, in fact, they were not, in violation of § 1692e(3) of the FDCPA.

In Avila, 84 F.3d at 225, the Seventh Circuit rejected an attorney debt collector's argument that he meaningfully reviewed letters, where evidence showed that he had signed 270,000 in a given year—right on par with what Huston and Hannah sent here (SMF ¶¶ 17-24):

> Mr. Rubin [a collection attorney] reviews and approves the general form used on letters sent by Rubin & Associates. He does not, however, personally prepare, sign, or review any of the letters sent to targets, including Avila. This is understandable, for Rubin would probably be in the hospital with a severe case of writer's cramp if he did because some 270,000 such letters go out each year. That, by the way, comes out to 1,062 per working day, 133 per working hour.

See, Avila, 84 F.3d at 225. Here, based on their discovery responses, Mr. Huston's rate

of signatures would come out to 1,333 per working day and 166 per working hour – or far more, if one considers that Mr. Huston was frequently in court in 2019, see, SMF ¶¶ 17, 19-23. Similarly, Ms. Hanna's rate would be about 923 per working day and 115 per working hour, even without factoring in that much of that time was spent in court and traveling to court, see, SMF ¶¶ 18-23.

Similarly, in Boyd, 275 F.3d at 644-45, the Seventh Circuit found that a three-lawyer firm that sent out about 51,718 collection per month "leaving little time for them to be reviewing the routine collection activity that generates the vast bulk of the mailings", failed to conduct a meaningful attorney review for purposes of §1692e(3) of the FDCPA. Citing ABA model Rule 5.3, and Avila, the Court found that "[a]n attorney's signature implies the attorney has formed a professional judgment about the debtor's case", a judgment which would not be possible having spent a few seconds reviewing each letter.

In Nielsen, 307 F.3d at 626-27, the Seventh Circuit found a similar, but slightly more detailed, level of attorney involvement in the collection of consumer debts to be insufficient for purposes of §1692e(3). The collector at issue Nielsen similarly spent only several seconds reviewing each letter, but also verified the correctness of the same type of information that Med-1's attorneys Huston and Hanna check, and performed various checks both before and after a letter was sent to a third-party printer, including performing a bankruptcy scrub, see, Nielsen, 307 F.3d at 626-27. Nonetheless, in affirming summary judgment in favor of the plaintiff class, the Seventh Circuit found that this level of review was not that which would require "exercising independent, trained legal judgment", see, Id., at 632.

Simply stated, the use of attorney letterhead and an attorneys' signature puts a consumer on notice that a debt collection matter has become more serious, i.e., that the collector's efforts are about to escalate, see, Avila, 84 F.3d at 228-229. Certainly, that is the message that Ms. Dietz understood from receiving two letters from attorneys regarding her medical debt on the same day; she thought she was about to be sued, experience garnishment, and that the immediacy of taking some action to stop this, whether making a payment or filing bankruptcy, had become more urgent, see, SMF ¶¶ 11-16. Almost certainly, Med-1 intended its letters' recipients to feel the matter was extremely urgent when it elected to send consumers collection letters on attorney letterhead.[2] This is the exact type of false, deceptive and misleading collection tactic that §1692e(3) was intended to prohibit. Summary judgment in favor of Ms. Dietz as to this claim is warranted.

## II. Med-1's Unlawful Collection Actions Harmed Ms. Dietz

That Ms. Dietz was harmed by Defendant Med-1's letters is simply undeniable, based on her testimony, see, SMF at ¶¶ 11-16. When Ms. Dietz received the two attorney letters, she was scared that matters had become much more serious and that she could be garnished, or possibly worse; in fact, Ms. Dietz's decision as to whether to file bankruptcy or whether to attempt to repay the debts that had accumulated during her period of unemployment was significantly impacted by Med-1's November 4, 2019 attorney collection letters, see, SMF ¶ 12-16.

---

2. Although it had been Med-1's policy to send both its initial collection letter to a consumer and its follow up collection letter to a consumer on attorney letterhead, Med-1 has apparently discontinued this practice, sending the initial collection letter on non-attorney letterhead and having it signed by a non-attorney collector, see, Exhibit D at p. 25, ln. 1 to p. 26, ln. 2.

13

In <u>Evans v. Portfolio Recovery Assocs.</u>, 889 F.3d 337, 349 (7th Cir. 2018), the Seventh Circuit Court explained that false statements are material if they influence a consumer's decision:

> Generally, §1692e only protects against false statements that are material—in other words, statements that would influence a consumer's decision ... to pay a debt. If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA -- even if it is false in some technical sense. Put another way, [f]or purposes of § 1692e, ... a statement isn't 'false' unless it would confuse the unsophisticated consumer.

<u>See</u>, <u>Evans</u>, 889 F.3d at 349 (internal citations omitted).

More recently, in <u>Bazile v. Fin. Sys. of Green Bay</u>, 983 F.3d 274, 280 (7th Cir. 2020), the Seventh Circuit, in reversing the district court's dismissal of a complaint which alleged violations of §1692e of the FDCPA, found that:

> [The plaintiff's] allegations may also support an inference that the lack of information about accruing interest detrimentally altered her choice about how to respond to and repay her debts. Indeed, it would be reasonable to expect discovery to reveal a detailed way in which the omitted information was detrimental to Bazile's substantive interests: Bazile, not knowing that the debt mentioned in the letter was accruing interest, chose to pay another debt with a lower interest rate, causing her to lose the difference between the interest that accrued under the two rates

<u>See</u>, <u>Bazile</u>, 983 F.3d at 280. The Court directed the district court to hold an evidentiary hearing as to whether the consumer had experienced a concrete injury -- even suggesting that the plaintiff could amend her complaint. <u>Id</u>.

In addition to playing a role in her decision as to whether and when to file bankruptcy or pay her debts, Med-1's false representation that two attorneys were involved in the collection of her debt caused Ms. Dietz' to experience physical manifestations of stress related to the inability to pay her bills and fear of garnishment or potentially worse, <u>see</u>, SMF ¶¶ 12-16. Ms. Dietz's Amended Complaint sets forth that

she was materially misled by Med-1's two November 4, 2019 collection letters, that they confused and alarmed her, see, Dkt. 15 at ¶ 10. Moreover, her deposition testimony supports that Defendant's use of attorney letters -- two on sent on the same day regarding the same debt -- made her believe that she would be garnished, and absolutely played a role in her choice as to whether to attempt to pay her debts or whether and when to file bankruptcy, see, SMF ¶¶ 11-16. Finally, Med-1's false representation that two attorneys were involved in her matter caused her to believe she may even be sued twice regarding the same debt, see, SMF ¶ 12. Her anxiety and stress were significant and caused her to experience sleeplessness, see, SMF ¶¶ 12, 15. In Kinnick v. Med-1, 2021 U.S.Dist.LEXIS 105303, at [*14]-[*15] (S.D. Ind. 2021), Magistrate Judge Baker found similar testimony regarding stress, anxiety, were sufficiently concrete for purposes of Article III standing:

> Other courts have explained that allegations of loss of sleep amount to physical manifestations that make the allegations of emotional distress real, not abstract, even if not necessarily significant. Thus, while Kinnick's allegations of harm do not necessarily indicate substantial emotional harm, his allegations are distinguishable from the recent cases cited above, where plaintiffs failed to tie the alleged FDCPA violations to any detrimental step or concrete harm. For these reasons, Kinnick has alleged a sufficiently concrete emotional harm and shown that an Article III case or controversy exists in order to establish standing for his claims.

Kinnick, 2021 U.S. Dist. LEXIS 105303, at [*14]-[*15], citing, Crowder v. Andreu, Palma, Lavin & Solic, 2021 U.S. Dist. LEXIS 69220, 2021 WL 1338767, at [*4] (M.D. Fla. 2021); Rivas v. Midland Funding, 842 Fed. App'x 483, 486 (11th Cir. 2021); and Waldrop v. LTS Collections, 2020 U.S. Dist. LEXIS 208548 [*3] (D. Ariz. 2020).

Indeed, Ms. suffered an injury-in-fact that is both particularized and concrete, see, TransUnion v. Ramirez, 141 S. Ct. 2190, 2204 (2021)("[C]ertain harms readily

15

qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III"). Ms. Dietz has provided ample testimony that Med-1's letters, in fact caused her physical harm, i.e., loss of sleep and significant distress, that was both concrete (it actually existed) and particularized (the harm happened to her), see, Pl.'s SMF at ¶¶ 11-16. Thus, Ms. Dietz has Article III standing to pursue her claims.

Ms. Dietz's deposition testimony supports her allegations, in her Amended Complaint, that Defendant's false collection actions caused her significant confusion, stress, and alarm, and that she experienced physical manifestations of this distress which played a role in her decision as to whether to pay her debts. Summary judgment should be granted in favor of Ms. Dietz.

## CONCLUSION

Defendant Med-1's form debt collection letters to Ms. Dietz falsely implied that they were sent by attorneys who were involved in the collection of her debt, when neither attorney was actually meaningfully involved in the collection of her debt or the decision to send the collection letters. Defendant's collection actions clearly violated §1692e(3) the FDCPA as a matter of law. Summary Judgment, pursuant to Fed.R.Civ.P. Rule 56, should be granted against the Defendant in favor of Plaintiff.

                                              Respectfully submitted,

                                              Melissa Dietz,

                                              By: /s/ David J. Philipps_____
                                              One of Plaintiff's Attorneys

Dated: August 31, 2021

David J. Philipps    (Ill. Bar No. 06196285)
Mary E. Philipps    (Ill. Bar No. 06197113)
Angie K. Robertson (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com
angie@philippslegal.com

John T. Steinkamp
John Steinkamp & Associates
5214 S. East Street
Suite D-1
Indianapolis, IN 46227
(317) 780-8300
(317) 217-1320 (FAX)
john@johnsteinkamandassociates.com

17

## **CERTIFICATE OF SERVICE**

      I, David J. Philipps, an attorney, hereby certify that on August 31, 2021, a copy of the foregoing **Plaintiff's Memorandum in Support of Summary Judgment** was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Nicholas W. Levi                                    nlevi@k-glaw.com
One Indiana Square, Suite 300
211 North Pennsylvania Street
Indianapolis, Indiana  46204

Nicholas Moline                                  nicholas.moline@med1solutions.com
Med-1 Solutions, LLC
517 U.S. Highway 31 North
Greenwood, Indiana 46142

John T. Steinkamp                             john@johnsteinkamandassociates.com
John Steinkamp & Associates
5214 S. East Street
Suite D-1
Indianapolis, IN 46227

<u>/s/ David J. Philipps</u>
David J. Philipps
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)