UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MELISSA DIETZ individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:20-cv-02278-JPH-DLP |
| MED-1 SOLUTIONS, LLC an Indiana limited liability company, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Melissa Dietz brought claims against Med-1 Solutions, LLC, alleging

violations of the Fair Debt Collection Practices Act.  The parties have each filed

motions for summary judgment.  Dkt. [43]; dkt. [46].  For the reasons that

follow, Med-1's motion is **GRANTED,** and Ms. Dietz's motion is **DENIED**.

**I.**
**Facts and Background**

The parties have filed cross-motions for summary judgment, so the Court

takes the motions "one at a time."  *American Family Mut. Ins. v. Williams*, 832

F.3d 645, 648 (7th Cir. 2016).  For each motion, the Court views and recites

the evidence and draws all reasonable inferences "in favor of the non-moving

party."  *Id.*  That's not necessary here, however, because even when all

evidence is interpreted in Ms. Dietz's favor, Med-1 is entitled to summary

judgment.

In 2018, Melissa Dietz incurred a debt for medical care from Community

Health Network that she could not pay because she didn't have health

1

insurance.  Dkt. 44-1 at 6 (Dietz Dep. at 18–19).  Med-1 Solutions, LLC, later assumed responsibility for collecting the debt.  *See id.*; dkts. 15-3 & 15-4 (Med-1 collection letters).  In March 2019, Ms. Dietz received a bill from Med-1.  Dkt. 44-1 at 6 (Dietz Dep. at 18–20).  Ms. Dietz was not employed at the time and could not pay the debt, but she planned on setting up a payment plan once she obtained a "steady income."  *Id.* at 6–7 (Dietz Dep. at 20–21).

One month later, Ms. Dietz received a call from a Med-1 employee asking if she could pay the debt.  *Id.* at 7 (Dietz Dep. at 21–22); dkt. 44-2 (call transcript).  Ms. Dietz replied that she was considering filing for bankruptcy and, if she did end up filing, would have to include the Community Health debt.  Dkt. 44-2 at 3; *see also* dkt. 44-1 at 12 (Dietz Dep. at 43).  In October 2019, Ms. Dietz signed a retention agreement with an attorney to assist her in filing for bankruptcy.  Dkt. 44-1 at 8–10 (Dietz Dep. at 28, 32–33).

On November 4, 2019, Ms. Dietz received two letters from Med-1 requesting payment on the Community Health debt.  Dkts. 15-3; 15-4.  Each letter was signed by a different Med-1 attorney.  Dkt. 15-3; dkt. 15-4.  The letterhead of each letter contained the respective attorney's name and title, along with the Med-1 logo.  Dkts. 15-3; 15-4.  Receiving letters from two separate attorneys on the same day made Ms. Dietz stressed and confused about the possibility of being sued twice for the same debt or having her wages garnished.  Dkt. 44-1 at 11, 13 (Dietz Dep. 38–39, 46–47).  When asked if she was "up at night sometimes worried" about this possibility, Ms. Dietz responded "Yes, sometimes."  *Id.* at 13 (Dietz Dep. 46–47).

2

In August of 2020, Ms. Dietz sued Med-1 alleging that the November 2019 collection letters violated Section 1692e(3) of the Fair Debt Collection Practices Act (FDCPA) because they falsely implied that the Med-1 attorneys were personally involved in the collection of her debt.[1]  Dkt. 1; dkt. 15 ¶¶ 13–14 (amended complaint).  Ms. Dietz filed a motion for summary judgment, dkt. [43], and Med-1 filed a cross-motion for summary judgment, dkt. [46].

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on cross motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party."  *Williams*, 832 F.3d at 648.

---

[1] Ms. Dietz originally filed this lawsuit as a class action, *see* dkt. 15 ¶¶ 16–21, but she has since stated her intention to proceed as an individual, dkt. 44 at 2.

**III.**
**Analysis**

Ms. Dietz argues that she is entitled to summary judgment on her claim
that Med-1's collection letters violated the FDCPA because they were
misleading and caused her harm.  Dkt. 44 at 9, 13.  Med-1 argues that it's
entitled to summary judgment on the merits of Ms. Dietz's claims and,
separately, because Ms. Dietz lacks standing.  Dkt. 47 at 11.  The Court "first
must address the 'threshold jurisdictional question' of whether" Ms. Dietz has
standing.  *Hinrichs v. Speaker of House of Representatives of Ind. Gen.
Assembly*, 506 F.3d 584, 590 (7th Cir. 2007).

"Standing has three elements.  A plaintiff must have (1) a concrete and
particularized injury in fact (2) that is traceable to the defendant's conduct and
(3) that can be redressed by judicial relief."  *Pierre v. Midland Credit
Management, Inc.*, 29 F.4th 934, 937 (7th Cir. 2022) (citing *Lujan v. Defs. of
Wildlife*, 504 U.S. 555, 560–61 (1992)).  Because this case is before the Court
on summary judgment, Ms. Dietz is required to go beyond the pleadings—she
"must suppl[y] evidence of specific facts that, taken as true, show each element
of standing."  *Wadsworth v. Kross, Lieberman & Stone*, 12 F.4th 665, 667 (7th
Cir. 2021).

"This case concerns the injury-in-fact requirement, which is the 'first and
foremost' of standing's three elements."  *Id.* (quoting *Steel Co. v. Citizens for a
Better Env't*, 523 U.S. 83, 103 (1998)).  In the context of the FDCPA, "a plaintiff
cannot establish standing simply by pointing to a mere procedural violation of

a statute." *Wadsworth*, 12 F.4th at 667–68.  Indeed, "federal courts may entertain FDCPA claims only when the plaintiff suffers a concrete harm that he wouldn't have incurred had the debt collector complied with the Act."  *Id.* "Concrete injuries encompass harms that are 'real, and not abstract,'" such as "[t]angible harms like physical and monetary injuries." *Cothron v. White Castle System, Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).

Med-1 argues that Ms. Dietz has not suffered a concrete injury in fact that is fairly traceable to the Med-1 collection letters.  Dkt. 47 at 13–19.  Ms. Dietz responds that Med-1's violation of the FDCPA caused her concrete harm, i.e., stress, confusion, and sleeplessness, and affected her decision-making about whether to try to pay the Community Health debt or declare bankruptcy. Dkt. 54 at 10–14.

## A. Detrimental action

Under the FDCPA, "[a] debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion . . .." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020); *Pierre*, 29 F.4th at 939.

Ms. Dietz argues that she believed she "could make payment arrangements as to some of her debts and avoid filing bankruptcy up until she received Med-1's false collection letters."  Dkt. 54 at 11.  At her deposition, Ms. Dietz testified that before receiving the collection letters, she had not yet decided whether she would file for bankruptcy.  Dkt. 44-1 at 12–13 (Dietz Dep.

at 43–45).  She further testified that until she received the collection letters,

she intended to "figure something out" with regard to the Community Health

debt.  *Id.* at 7 (Dietz Dep at 23).  But Ms. Dietz has not designated evidence

showing that she took some action in response to receiving the collection

letters that put her in a worse—or different—position than if she had not

received them.

Med-1 has shown that before she received the collection letters, Ms. Dietz

had not made any payment on the Community Health debt or filed for

bankruptcy.  *Id.* at 10 (Dietz Dep. at 33).  And her receipt of the collection

letters did not cause her to take either, or any other, detrimental action:

```
                                                      Page 41
    1   Q.   Ms. Dietz, after receiving the two letters in
    2        November of 2019 and providing those to your
    3        attorney, did anything about your plan or your
    4        course of action with respect to this debt or your
    5        intended bankruptcy change?
    6   A.   No.
```

*Id.* at 12 (Dietz Dep. at 41).  Instead, the only action Ms. Dietz took in response

to the collection letters was providing them to her attorneys.  *Id.* at 10 (Dietz

Dep. at 35).

Thus, Ms. Dietz has not supplied evidence of specific facts showing that

the collection letters caused her to take any action to her detriment, including

making a payment on the debt or filing bankruptcy.[2]  *Cf. Pierre*, 29 F.4th at

---

[2] For similar reasons, the Court need not address Ms. Dietz's supplemental argument
that she has standing because she suffered harm "akin to the common law tort of
fraud."  *See* dkt. 58 at 2–3 (citing *Persinger v. Southwest Credit Sys.*, 629 F.3d 676 (7th
Cir. 2011)).  A claim for common law fraud requires detrimental reliance, *see, e.g.*,

939 (finding no standing because plaintiff "didn't make a payment, promise to do so, or other-wise act to her detriment in response to anything in or omitted from the letter").

### B. Other concrete injury

Ms. Dietz argues that the collection letters caused her concrete injury in that she experienced emotional stress and confusion, and that the stress caused her to lose sleep. Dkt. 54 at 13–14. She has designated evidence that she was stressed, confused, and afraid of being sued or having her wages garnished after receiving the collection letters. Dkt. 44-1 at 13 (Dietz Dep. at 46–47). She has also designated evidence that she was occasionally "up at night . . . worried about" the letters. *Id.*

But "[p]sychological states induced by a debt collector's letter"—including emotional distress and confusion—are not concrete injuries. *Pierre*, 29 F.4th at 939. This holding has been reaffirmed in the wake of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). *See Wadsworth*, 12 F.4th at 668–69 ("A plaintiff's 'state of confusion' resulting from an FDCPA-deficient communication, without any ensuing detriment, is not a concrete injury . . .."); *see also Brunett*, 982 F.3d at 1068.

---

*Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013), which Ms. Dietz has not shown. Therefore, the harm Ms. Dietz alleges is not sufficiently analogous to the tort of fraud. *Cf. Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146, 1153–54 (7th Cir. 2022) (analyzing whether plaintiffs satisfied elements of defamation to determine if alleged FDCPA harm was sufficiently analogous to the common law tort to establish standing).

Furthermore, "stress by itself with no physical manifestations and no qualified medical diagnosis" does not "amount to a concrete harm." *Pennell*, 990 F.3d at 1045. Here, Ms. Dietz has not designated evidence that she was examined for or diagnosed with a medical condition related to her loss of sleep. This case is similar to *Wadsworth*, where the Seventh Circuit found that the plaintiff had not established standing even though she had designated evidence that she "got less sleep and felt intimidated, worried, and embarrassed" as a result of the alleged FDCPA violation. 12 F.4th at 668–69; *see also Choice v. Unifund CCR, LLC*, 2021 WL 2399984 *2 (N.D. Ill. June 11, 2021) ("As pure psychological harm, sleep deprivation caused by worry alone cannot establish standing."); *Milisavljevic v. Midland Credit Management, LLC*, -- F. Supp. 3d --, 2022 WL 204371 *4 (N.D. Ill. Jan. 24, 2022) (same).

\*   \*   \*

In sum, Ms. Dietz has not shown that she suffered a tangible harm attributable to a violation of the FDCPA, "'such as paying money she did not owe' or would have disputed." *Wadsworth,* 12 F.4th at 668 (citations omitted). She therefore has not suffered an injury-in-fact and this case must be dismissed for lack of subject matter jurisdiction. *Pierre*, 29 F.4th at 940.

## IV.
## Conclusion

Ms. Dietz's motion for summary judgment is **DENIED**. Dkt. [43]. Med-1's Motion for summary judgment is **GRANTED**. Dkt. [46]. Ms. Dietz's motion

for leave to file supplemental authority is **GRANTED** to the extent that it has

been considered in deciding these motions.  Dkt. [58].

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 8/25/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel